Reed, J.
Whether the signature to the note was genuine or a forgery was put directly in issue by the pleadings,— was the controlling issue. If found a forgery there was an- *413 end of plaintiff’s case; if found genuine other legitimate issues must of necessity be determined and found for the defendant to defeat a recovery. The direct question was propounded to the jury for a special finding. No finding was made, but a statement was returned that the jury could not agree, which was accepted by the court. A general verdict for the defendant was also returned, accepted, and a judgment entered upon it. We are clearly of the opinion that this was error. There was a mis-trial. The failure to find upon that issue was equivalent to a failure to find and agree upon any verdict in the case. No intelligent or intelligible finding could be made upon subsequent issues in which that issue was not involved and conclusive. Of the right and power of the court to order a special finding upon any fact involved, either upon his own motion or at the instance and suggestion of counsel, there can be no doubt. It is a power that has been exercised and unquestioned for ages under the common law practice. Coke on Litt. 228; 9 Rep. 12; Rex v. Plummer, 12 Mod. 628; Bac. Abridg., Verdict (D), and special provision for such a verdict is made by the Code, Sess. Laws 1887, sec. 199,—“ In any case in which the jury render a general verdict, they may be required, by the court, to find specially upon any particular questions of fact to be stated to them in writing. * * * Where a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter.” ^
In Patterson v. United States, 2 Wheat. 225, it is said, “ The rule of law is precise upon this point. A verdict is bad if it varies from the issue in a substantial matter, or if it find only a part of that which is in issue. The reason of the rule is obvious ; it results from the nature and the end of the pleading. Whether the jury find a general or a special verdict, it is their duty to decide the very point in issue ; and although the court in which the cause is tried may give form to a general finding, so as to make it harmonize with the issue, yet, if it appóars to that eoufif, or to the appellate court, that the finding is different from the issue, or is com *414 fined to a part only of the matter in issue, no judgment can be rendered upon the verdict.”
In Sutton v. Dana, 1 Met. (Mass.) 383, it was said:
“ If the question submitted to the jury, and on which they were not agreed, had been as to any facts upon which the plaintiffs relied to maintain their action, most .clearly no furtb.er proceedings could be had until that issue should be found by. the -jury.”
.It is needless to multiply authorities upon this point. It must be apparent that no finding favorable to plaintiff could be made upon any issue by a jury, a part of- whom believed the note to. have been, a forgery, consequently no finding upon the other issues tried could be conclusive of the rights of the parties.
II. The order of introducing testimony, and latitude allowed in cross-examination, is greatly in the discretion of-the court; In this case we think the discretion abused and prejudicial, not so much in allowing the defense to attempt to establish their contention at that time, but in effect, to allow the witness Hurd, in all matters aside from those on which he was examined in chief, to become the witness of the defense without being bound by his testimony, and for which they were not required to assume any responsibility, and where-the plaintiff was deprived of the right, of cross-examination.. The rule is well settled, and when a witness is allowed to be examined on cross-examination on matters extraneous, not-embraced in- the direct examination, he is to be regarded as the witness of the party examining, and he is so far concluded by it as to prevent its contradiction. This rule is so well known and established that authorities are hardly necessary, but see 1 Grreenlf. on Ev. § 445; and that the rule is well established in the supreme court of the United States, see Phil. & Tren. R. R. Co. v. Simpson, 14 Pet. 448, where it is said, at page 461, “ These statements would have been admissible upon two distinct grounds, * * * secondly, upon the broader principle now well established, although sometimes lost sight of in our- loose practice at trials, that a party *415 has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine .him as to other matters he must do so by making the witness his own, and calling upon him as such in the subsequent progress of the cause.” We do not deem this point as controlling or conclusive, or the error sufficient to warrant a reversal of this case, but as there will be a new trial we call attention to it so a repetition will be avoided.
III. The admission of the record, in the case of Steele & Malone in their attempt to have the claim allowed by defendant in error, for the avowed purpose for which it was introduced, viz.: to show that the matter was one of public notoriety, and allow the jury to infer knowledge by the plaintiff in error that would invalidate his title as a legal holder of the paper, was error. Such knowledge must have been affirmatively established by the defense, and could, not be found by the jury inferentially, by proof of the existence of such facts. The most it could do was to east suspicion upon the ionafides of the transaction. It was not claimed,; nor could it successfully be claimed, that it was such an adjudication as could operate as a bar and conclude the- plaintiff by way of estoppel.
First. There was no final judgment.
. Second. There was no adjudication for'the purpose of collecting the note,—it was mot due; ' It was simply a proceeding to compel the administrator to allow the claim before its, maturity.
Third. It is apparent that the suit was abandoned for want of proof of title to the paper in plaintiffs ; that could not affect the payee or any subsequent innocent purchaser for. value. • ‘ "
Fourth. It'was of matters inter-alios acta, and had no ten-; deney to disprove plaintiff’s title to the note. There was no proof of any knowledge on the part of the plaintiff, or his individual' assignor, of any fact that would discredit the paper, or put the plaintiff to inquiry, All the proof prop *416 erly admitted was as to the want of knowledge of any such fact, and it could not be ovevcome by proof that other parties knew, and consequently plaintiff should have known.
The defense was allowed an unprecedented and unwarranted range. The questions to he determined were few and simple.
First. Was the paper the note of deceased, dr a forgery ?
Second. Was the plaintiff a Iona fide purchaser of the note for value before maturity, without knowledge of any fact that would discredit and invalidate it ? And upon the answer to the last clause of the last question depended the right of plaintiff to go back and attack the note for want of consideration, and proof of the facts, rights and equities as between the payee arid intermediate holders. It must at once be conceded that without proof of some knowledge on the part of the plaintiff of some fact that would' invalidate the note, all proof of the existence of such fact, arid all proof of intermediate facts were inadmissible, and upon the failure to prove such knowledge the testimony was inadmissible, and if admitted should have been withdrawn from the consideration of the jury.
It follows, that the court erred in instructing the jury that it could consider such litigation in determining whether plaintiff was a Iona fide holder. The evidence, clear, conclusive and uncontradicted, is that John F. Tourtelotte bought the note for $9,200, and paid for it,—that he had no knowledge of the litigation concerning it, or of any fact that would invalidate it. It was also proved and uncontradicted that plaintiff bought the note from his son, paying $9,700 for it; that he was a non-resident,—did not see the note, and the delivery took place by indorsing it and its being handed to plaintiff’s attorney; both bought the note before its maturity. In our view of the case no knowledge obtained by John F., nor any marks to cast suspicion upon the note that might have been observed by him, could be imputed to the plaintiff. John F. was the seller and indorser, not the agent; he was not bound to communicate any facts within his knowl *417 edge, had he known any of disparagement. He was the indorser, and as such liable to his indorsee. Plaintiff might well, perhaps, have taken the note upon the indorsements of Steele & Malone, and John P. It is urged that if plaintiff had no actual knowledge impairing the validity of the note he was negligent; that he should have seen the note, and that had he done so, the marks and indorsements upon it were such as to excite suspicion and lead to investigation. We cannot agree with this contention. ' Had he made inquiries, and in fact learned all that could be known, he could have learned nothing to invalidate the note.
IY. Defenses to negotiable paper, like any other defenses, are. to be established affirmatively by the party relying upon them. They cannot be established inferentially and arbitrarily by a jury, in the absence of all evidence. A suspicion or belief of want of good faith, unsupported by evidence, cannot be made the basis of a verdict.
The rule in this state in regard to commercial paper, wisely adopted in the interest of commerce and for the protection of' purchasers, is announced by the Supreme Court in Merchants Bank v. McClelland, 9 Colo. 608, as follows:
. “ If there, is nothing upon the face of a negotiable instrument, or in the written indorsement or assignment, to notify the assignee that the instrument was originally given upon an illegal consideration,. (gambling debts excepted,) or obtained through fraud, the assignee who pays value therefor, and takes the same in good faith before maturity, may recover as against the maker. This is true, even though such assignee be in possession of facts or circumstances sufficient to arouse suspicion in the mind of a person of ordinary prudence, and though.he is guilty of negligence in not first following up such information for the purpose of discovering the fraud or illegality to which the suspicious circumstances may seem to point.” Followed and approved in Coors v. German Nat'l Bk., 14 Colo. 202, and in Rand v. Pantagraph Stationery Co., ante, p. 270.
The rule as above stated .is more unrestricted and broader *418 than that in some of the states, notably, the state of New York, but is the rule of the federal courts. See Bk. of Metropolis v. New England Bk., 1 How. 234; 6 How. 112; Murray v. Lardner, 2 Wall. 110; Hotchkiss v. Bank, 21 Wall. 354; Brown v. Spofford, 95 U. S. 474; Swift v. Smith, 102 U. S. 442; and is the rule in the great majority of the states.
The later decisions in the courts of England are in harmony with the American rule, as above stated. In Bank of Bengal v. Mcleod, 5 Moore, Indian Appeals 1; 7 Moore, P. C. C. 35, it is said: “ The rule laid down in Gill v. Cubitt, 3 Barn. & Cress. 446, and Down v. Halling, 4 Barn. & Cress. 330, that the negligence of a party taking a .negotiable instrument fixes him with the defective title of the party passing it, is no longer law.” It is well settled that a party may be a bona fide holder notwithstanding the malafides of his indorser. See 2 Rand, on Com. Paper, § 987; 1 Daniel on Neg. Insts. § 769; 1 Parsons, 261; Masters v. Ibberson, 8 Com. B. 100; Ayer v. Tilden, 15 Gray 178; Dillingham v. Blood, 66 Me. 140.
By the law merchant a purchaser is presumed to be a holder for value, and to have purchased in good faith any paper before its maturity, and this presumption must be overcome by competent testimony. Where there is no testimony impeaching the bona fides of the transaction of the holder, it is error to admit evidence of want of consideration, fraud in obtaining, irregularity in transferring, and the knowledge of defects or defenses by the intermediate holders or indorsers.
There was absolutely no testimony to show that the plaintiff was not a bona fide holder for value. All the testimony upon the transaction was in favor of its regularity and legality. There was no testimony to overcome the legal presumption, or to cast a suspicion upon it, hence all the instructions submitted upon the transactions prior to the title of John F., as well as those in regard to the consideration of the note, etc., were erroneous,—there was no basis upon which they could be predicated. There are several *419 other minor errors assigned which we do not find it neeessarjr to examine. Sufficient has been said to aid in the determination of the case upon a new trial.
The judgment will he reversed, and the cause remanded for a trial de novo.

Reversed.